Div. 246, 50 N. Y. Supp. 1088, affirmed 163 N. Y. 376, 57 N. E. 1114.

The defendant contended upon the trial, and introduced testimony tending to prove, that the ailments of which the plaintiff complained were due, not to her fall upon the stairway, but to an antecedent cause. The evidence on this subject was rather conflicting, and not so clear and conclusive as to compel the adoption of the defendant's view.

The testimony as to the plaintiff's fondness for society before the accident, which is criticised in the brief for the appellant as having been improperly received, can hardly have done any harm, as the motion to strike it out was promptly granted in the first instance, and it was promptly stricken out by the court without any motion by counsel in the second instance, and the jury were distinctly and immediately directed to disregard it.

We find nothing in this case which would warrant us in interfering with the result reached below. It follows that there must be an affirmance.

Judgment and order affirmed, with costs. All concur.

---

### In re WARREN.

(Supreme Court, Appellate Division, First Department. June 23, 1905.)

1. DECEDENTS' ESTATES—ASSETS—PROCEEDS OF JUDGMENT ON FRENCH SPOLIATION CLAIMS—RIGHT OF NEXT OF KIN.

An administrator with will annexed, dealing with the proceeds of a judgment against the federal government in favor of his testator based on a French spoliation claim, as if they were an asset of the estate of the testator, does not thereby deprive the next of kin of their interests therein.

2. SAME—EXECUTION AGAINST ADMINISTRATOR—ACCOUNTING.

Where, on application for leave to issue execution on a judgment against an administrator, it appears that the fund held by the administrator consists of a part of the proceeds of a judgment against the government in favor of the decedent, based on a French spoliation claim, and the affidavit of the administrator expressly avers that there is not property in his hands applicable to the judgment, the court should direct an accounting under Code Civ. Proc. § 2725, subd. 1, allowing in proceedings against an administrator by a judgment creditor for an execution, as prescribed by section 1826, the making of an order requiring the executor to render an intermediate account, so as to enable the court to determine whether the proceeds of the judgment against the government constitute assets of the estate of the decedent.

Appeal from Surrogate's Court, New York County.

Application by Charles J. Warren for leave to issue execution on a judgment against Titus C. Hammond, as administrator with will annexed of Thomas J. Christophers, deceased. From a decree granting the application, the administrator appeals. Reversed.

On the 29th of March, 1905, one of the surrogates of the county of New York, on the application of Charles J. Warren, issued an order requiring Titus C. Hammond, as administrator with the will annexed of Thomas V. J. Christophers, deceased, to show cause why an application made by the said Warren for leave to issue execution upon a judgment should not be granted. The or-

der was made upon an affidavit of the attorney for Warren, setting forth, among other things, that a judgment was recovered by said Warren on the 28th of February, 1905, against Titus C. Hammond, as administrator with the will annexed of Thomas V. J. Christophers; that the judgment was against that defendant in his representative capacity; that the action in which the judgment was recovered was brought upon promissory notes of the said Christophers; that such judgment remains unpaid, although there are sufficient assets of the decedent in the possession of the defendant, or under his control, applicable to the judgment; that the assets of the estate in the possession of the defendant on the 16th day of April, 1903, consisted of the sum of $17,-262, which was paid by the government of the United States to the defendant, as administrator of Christophers' estate in full settlement of the claim of such estate "against the United States for the loss of the ship Ganges, otherwise known as the 'French Spoliation Claims' "; that immediately upon the payment of the money to the defendant by the United States Warren filed a claim against the estate of the deceased, which was rejected by the administrator, and thereupon the action above referred to was begun against the administrator on the rejected claim, and that action resulted in favor of the plaintiff therein, as above set forth; that letters of administration with the will annexed were issued to Hammond by the Surrogate's Court of the county of New York in 1901; that Hammond is a nonresident of the state of New York. On the return of the order to show cause, Hammond, the administrator with the will annexed, appeared, and presented an answer or answering affidavit in which he sets forth his appointment as administrator with the will annexed, and admits the recovery of the judgment against him in favor of Charles J. Warren; and, after making certain denials, further sets forth that he received notice of the claim of Warren, but that prior thereto he (administrator), with all other parties interested in the estate of Thomas V. J. Christophers, with the exception of Warren, entered into a certain agreement, which is annexed to his answer or affidavit. By that instrument it appears that the parties thereto, namely, the residuary legatees named in the last will and testament of Christophers, and the widow and only heir at law and next of kin of said Christophers, and Hammond, the administrator with the will annexed, agreed that a certain French spoliation claim arising out of the seizure of the ship Ganges, amounting to $17,263, had been awarded by the United States Court of Claims and a judgment therefor rendered against the United States in a proceeding had before said Court of Claims to Thomas V. J. Christophers, and the Congress of the United States has duly appropriated the sum of $17,263 for the payment of said claim, payable to the said Titus C. Hammond, as said administrator; that Christophers died a resident of the county of New York in 1890, leaving his next of kin and a last will and testament duly admitted to probate in 1890, and that in the will Christophers made provision for his widow and son; that it is necessary, before the claim can be paid to Hammond, as administrator, by the Treasurer of the United States, that competent proof be adduced before the Court of Claims that there is next of kin surviving Thomas V. J. Christophers, deceased, and that Hammond represents the next of kin; that Charles C. Blair was retained by Christophers to prosecute the said claim in the Court of Claims upon the agreement and stipulation that Blair was to receive as compensation 35 per cent. of any sum which might be awarded or secured to Thomas V. J. Christophers or his estate, and that Blair prosecuted the said claim to a successful conclusion; that in the course of the proceedings in the Court of Claims, in order to determine the rights of conflicting claimants to the sum to be awarded by reason of the seizure of the ship Ganges, a stipulation was made by the parties before the Court of Claims that one J. B. Van Wagenen should receive a certain proportion of any award which might be made by the said Court of Claims, and that after making such stipulation further opposition on the part of the interests represented by Van Wagenen was withdrawn; that, in order to facilitate the payment of the award to the administrator, and to distribute the same among the parties thereto entitled, "it is hereby mutually agreed that the following conditions and agreements should be binding upon all the parties hereto, and shall be in consideration for the waiving of any and all further claims of any kind and nature upon said

estate, or upon said fund not herein described, expressed, or stipulated." It was further agreed, among other things, that the amount of the claim should· be collected by a certain time named; that out of the award of $17,263 $5,179 should be paid to Charles H. Blair; that there should be paid to the legatees under the will of Christophers $200, to Yates, attorney, for his services for the administrator, $700, to Titus C. Hammond, for fees and disbursements, $500, to the widow, Mary L. Christophers, and William W. Christophers, the sum of $2,500; and then it was expressly understood and agreed that, should any other claim which is at present unknown be presented against the estate of Christophers within six months of the distribution of the net amount of the claim awarded by the Court of Claims, after deducting the expenses of collecting the same, and such claim or claims should be proved and allowed by the surrogate of the county of New York, the parties to the agreement other than the Van Wagenen interest who have received in satisfaction of their claim or interest a sum in excess of $500 will contribute pro rata towards the payment of said claim, not, however, to exceed the amount received by them, and will to that extent indemnify the administrator by their under- taking in writing. The administrator then set up in his answer or affidavit that thereafter and under the terms of· the agreement he received the sum of $7,855, and that that is the only sum of money or asset of any nature or kind whatever that has come into his hands as administrator; that, after receiving such sum of $7,855, he paid $7,655, in accordance with the terms· of the agreement, such money being paid to the persons entitled to receive the same under the stipulation, exclusive of the legatees under the will, other than the residuary legatees, and the balance of $200 remaining in his hands, under the terms of the stipulation, was paid by him to the legatees; that he has paid to the legatees mentioned in the will, other than the residuary legatees, the sum of $125, leaving in his hands the sum of $75. It is then set forth as follows: "The said Titus C. Hammond further alleges that there is not money or other property of the estate of said Thomas V. J. Christo- phers, deceased, applicable to the payment or satisfaction of the said Charles J. Warren's claim, and that there has not been since said claim was presented, and that the only estate now in his hands as administrator is the sum of $75, which is due to legatees as herein set forth." After hearing the ap- plication, the surrogate granted the motion for leave to issue execution, and from the order entered thereupon the administrator with the will annexed ap- peals.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTER- SON, INGRAHAM, and LAUGHLIN, JJ.

L. Dennis, for appellant.
Isaac N. Miller, for respondent.

PATTERSON, J.   It will be seen from the foregoing statement that, although Hammond, as administrator, entered into an agree- ment by which a distribution of the moneys he received has been made to various parties, including legatees under the will of Thom- as V. J. Christophers, yet it is insisted by him that such moneys are not assets of the estate of his decedent.   It is alleged in the affidavit of·Warren that the $17,263 was received by Hammond in settlement of a claim against the United States for the loss of the ship Ganges, being one of those claims known as the "French Spoliation Claims." The administrator insists that under the acts of the Congress of the United States and under the decisions of the Supreme Court of the United States construing those statutes the fund which he re- ceived is not an asset of the estate of Christophers, but, on the contrary, is a gift, gratuity, or bounty made or given by the United States; and that the creditors of the decedent have no right or in-

terest therein, it belonging exclusively to, and being for the sole benefit of, the next of kin of the decedent; and hence it is argued that the moneys are not available to the creditors of Thomas V. J. Christophers. It appears also that Hammond has distributed the moneys, or some of them, under the will of Christophers, and has treated them to some extent as if they were assets of his estate; but that has been done apparently with the consent of the next of kin, and by an agreement to which they were parties. In the order appealed from it is recited as follows:

"And it appearing to my satisfaction that the assets of the said estate are sufficient to pay the said judgment in full, it is  *  *  *  ordered that the said motion be, and the same is hereby, granted, and the said Charles J. Warren is hereby permitted to issue execution upon the said judgment in due form of law in his favor and against the said administrator to collect the sum of two thousand four hundred fifty-one and $08/100$ ($2,451.08) dollars, with interest thereon from the 27th day of February, 1905."

This adjudication is conclusive evidence (except on appeal) that there are sufficient assets in the administrator's hands to satisfy the sum for which the order permits the execution to issue. Section 2552, Code Civ. Proc. We are of opinion that there was not enough in the proof before the surrogate to authorize the order made. The proceeding is taken under sections 1825 and 1826 of the Code of Civil Procedure. By the first section it is enacted that an execution shall not be issued upon a judgment for a sum of money, against an executor or administrator in his representative capacity until an order permitting it to be issued has been made by the surrogate from whose court the letters were issued. Such an order must specify the sum to be collected, and the execution must be indorsed with a direction to collect that sum. So far the proceeding is regular. By section 1826 it is provided, however, that, where it appears that the assets, after payment of all sums chargeable against them for expenses and for claims entitled to priority as against the plaintiff are not or will not be sufficient to pay all the debts, legacies, or other claims of the class to which the plaintiff's claim belongs, the sum directed to be collected by the execution shall not exceed the plaintiff's just proportion of the assets. No preference can be given to a judgment creditor under this section. Schmitz v. Langhaar, 24 Hun, 168, affirmed 88 N. Y. 503.

We think there was not enough before the surrogate on this application to justify the finding that there were in the hands of the administrator assets sufficient to pay in full the Warren claim. It is a very serious question whether the amount paid to the administrator with the will annexed is an asset of Christophers' estate at all; but we are not called upon to determine that now, in the absence of the record of the judgment in the Court of Claims. That the administrator with the will annexed may have dealt with some of the proceeds of that judgment as an asset is not conclusive upon the question. He could not deprive the next of kin of their interest in that fund by any act of his, and, if he has distributed the money under the terms of the will of Christophers, with the assent of the next of kin, if the money belonged to them, that does not convert

94 N.Y.S.—19

the fund into an asset of the estate. To entitle the petitioner to have execution issue upon his judgment he is required to show either that the representative has funds of the estate on hand applicable to the payment of the judgment which he refuses to apply, or that funds of the estate have been misapplied which should have been devoted to the payment of the judgment. Matter of Gall, 40 App. Div. 114, 57 N. Y. Supp. 835.

It is not satisfactorily shown here that the funds arising out of the payment to the administrator of this French spoliation claim is an asset of Christophers' estate. It is alleged to be so in the affidavit of the judgment creditor, but the answering affidavit plainly sets forth that there is not money or other property of the estate of Christophers applicable to the payment or satisfaction of Warren's claim. We think this is an eminently proper case for an accounting under subdivision 1 of section 2725 of the Code of Civil Procedure, which allows proceedings against an executor or administrator, where an application has been made by a judgment creditor as prescribed in section 1826; and the surrogate may, in his discretion, make an order requiring an executor or administrator to render an intermediate account. On such an accounting, everything in connection with the award made by the Court of Claims may be inquired into, and the nature of that award, whether constituting an asset of the Christophers estate or not may be determined. It is true that an order to account is within the discretion of the surrogate, but we think that he should determine, after a full disclosure of all the facts, whether the Ganges award is an asset of the Christophers estate, and that the order should be reversed, without prejudice to the right of Warren, as a judgment creditor, to take such proceedings in connection with his application for leave to issue execution or otherwise, as he may be advised.

The order must be reversed, with costs of the appeal to abide the event.

O'BRIEN, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur. INGRAHAM, J., concurs in result.